IN THE MATTER OF THE TAXABLE STATUS OF PROPERTY CONSISTING OF A 10.5 ACRE TRACT OF LAND AND ALL IMPROVEMENTS AND ALL PERSONAL PROPERTY LOCATED THEREON AT 1700 WEST EHRINGHAUS STREET, ELIZABETH CITY, NORTH CAROLINA, OWNED BY CAROLINA CONFERENCE ASSOCIATION OF SEVENTH-DAY ADVENTISTS, INC. AND MADE AVAILABLE TO W. R. WINSLOW MEMORIAL HOME, INC.

No. 791SC556

(Filed 18 March 1980)

Taxation § 22.1— nursing home affiliated with church—gratuitous occupation— property exempt from taxation

Where a religious association made a loan to respondent nursing home, with which the association was affiliated, to expand its facilities, the nursing home's payment of an amount equivalent to the interest on the loan and the depreciation on the property did not prevent the nursing home from occupying the property gratuitously, and the property in question was exempt from *ad valorem* taxation in that it was being used for a charitable purpose by a charitable institution within the meaning of G.S. 105-278.7(f)(4), G.S. 105-278.7 (a)(2), and G.S. 105-278.7(c)(1).

APPEAL by petitioner from *Walker (Ralph A.), Judge.* Judgment entered 15 March 1979 in Superior Court, PASQUOTANK County. Heard in the Court of Appeals 16 January 1980.

This action began when the Commissioners of Panquotank County denied the W. R. Winslow Memorial Home, Inc. an exemption from *ad valorem* taxes. The home appealed to the Property Tax Commission, sitting as the Board of Equalization and Review. The Property Tax Commission ordered that the assessment of the subject property by Pasquotank County be set aside and that respondents' claim for exemption be allowed. The Board of Commissioners of Pasquotank County petitioned for review in Superior Court. The court found that the Property Tax Commission's findings and conclusions were supported by the evidence and affirmed the order allowing exemption from *ad valorem* taxes. Petitioner appealed.

*White, Hall, Mullen, Brumsey & Small, by H. T. Mullen, Jr., and G. Elvin Small III, for the Board of Commissioners of Pasquotank County, petitioner appellant.*

*Mount, White, King, Hutson, Walker & Carden, by E. J. Walker, Jr., for Carolina Conference Association of Seventh-Day Adventists, Inc. and W. R. Winslow Memorial Home, Inc., respondent appellees.*

*Johnson, Gamble & Shearon, by Samuel H. Johnson, for North Carolina Health Care Facilities Association, amicus curiae.*

ERWIN, Judge.

Pasquotank County contends on appeal that:

"The Superior Court erred in affirming the August 4, 1978 final decision of the North Carolina Property Tax Commission which final decision made findings, conclusions, and decisions affected by error of law on the part of the Commission and unsupported by substantial competent evidence in view of the entire record as submitted and which final decision adjudged that the assessment by Pasquotank County of certain property owned by respondent be set aside and that the property be exempt from ad valorem taxation pursuant to G.S. 105-278.7(a)(2)." (Typed from material in all caps)

We find no error and affirm the judgment entered.

The evidence presented before the Property Tax Commission, sitting as the Board of Equalization and Review, tended to show the following.

The W. R. Winslow Memorial Home, Inc. is a nursing home operated mainly for the aged and infirm located in Elizabeth City. The home is affiliated with the Seventh-Day Adventist Church and is funded partly through the W. R. Winslow Foundation. The land on which the home is located was donated to the Seventh-Day Adventist Church by W. R. Winslow, who had a special interest in the care of the aged. The home is run as a nonprofit corporation separate from the church, although the philosophy of the Seventh-Day Adventist Church is obeyed in the administration of the home. The major application of that philosophy is in concern for the spiritual, emotional, and mental well-being of the

patients in addition to concern for their physical well-being. There are no religious or other restrictions on entry, except that maternity, tubercular, alcoholic, mental, or drug addicted patients are forbidden.

All patients must be able to pay the home's fee when they are admitted, but that rule is violated in practice. The home does pay certain sums labeled "rent" to the Carolina Conference of the Seventh-Day Adventist Church, but that is merely a label of convenience. The sums consist of the interest on a mortgage, which the church entered into to provide funds for the expansion of the home, and a sum for depreciation. The church accumulates the depreciation for future capital improvements. The home's auditor testified that these were expenses which the home would have if it owned the property and that the church did not earn a profit from the rent. The administrator of the home felt that it was no longer possible to define a charitable institution as one which provided services free of charge, because the government now provides funds for the indigent. He felt that the home was a charitable institution, because it provided more services than are covered by government reimbursements.

Medicaid paid all or a portion of the home's fee for most of its patients, but Medicaid placed a ceiling on reimbursements. The home was not allowed to charge the patients or their families the difference between the Medicaid payment and the home's fee. Medicaid paid the home $28.00 per day for skilled care; the home's expenses for skilled care were $31.46 per day. Medicaid paid $23.30 per day for intermediate care; the home's expenses were $24.82. The difference was made up by donations, chiefly from the Winslow Foundation. No patient had ever been forced to leave the home because he or she could not pay the home's fee.

Some patients had been admitted who did not qualify for Medicaid and who could not pay the fee; others were admitted before their Medicaid eligibility or other fee arrangements were determined. It was a policy of the home to try to determine the method of payment before admission. There had been a surplus in recent years, after donations, which the home had used to air condition the original building. The home had no stockholders and paid no dividends. Its assets would be distributed to the church if the corporation were dissolved. The home was exempt from state and federal income taxes as a charitable institution.

Exhibits included financial statements for the home from 1974 through 1977, the constitution and bylaws of the Carolina Conference of the Seventh-Day Adventist Church, the Articles of Incorporation and Bylaws of the W. R. Winslow Memorial Home, Inc., and a letter from the home's administrator to the Department of Social Services concerning determination of Medicaid status prior to admission.

The County contends that the decision holding the real property in question is exempted from *ad valorem* taxation by G.S. 105-278.7(a)(2) is wholly unsupported by either the findings of fact made by the Commission on the entire record as submitted, and in order for property to be exempted from *ad valorem* taxation under G.S. 105-278.7(a)(2), it is necessary that the property be "wholly and exclusively used by the occupant for nonprofit educational, scientific, literary, or charitable purposes" and that if it is occupied by one other than the owner, it must be "occupied gratuitously."

In considering this case, we agree with the statement written by Chief Justice Parker in *Wake County v. Ingle*, 273 N.C. 343, 346, 160 S.E. 2d 62, 64 (1968).

"What is said in *Seminary, Inc. v. Wake County*, 251 N.C. 775, 112 S.E. 2d 528, is relevant here:

'In this connection this Court stated in *Harrison v. Guilford County*, 218 N.C. 718, 12 S.E. 2d 269, that statutes exempting specific property from taxation because of the purposes for which such property is held and used, are and should be construed strictly, when there is room for construction, against exemption and in favor of taxation (citing cases).

' "By the rule of strict construction, however, is not meant that the statute shall be stintingly or even narrowly construed * * * but it means that everything shall be excluded from its operation which does not clearly come within the scope of the language used." Stacy, C.J., in *S. v. Whitehurst*, 212 N.C. 300, 193 S.E. 657.' "

Our determination will be made in view of the above.

Carolina Conference Association of Seventh-Day Adventists, Inc. is a nonprofit corporation with authority to hold title to and

operate schools, churches, and medical facilities and "to carry on any line of religious, educational, benevolent and philanthropic work." The occupant and operator of the nursing home is W. R. Winslow Memorial Home, Inc., a nonprofit corporation of North Carolina, with authority to "own, operate, and maintain a home or homes for aged persons or senior citizens." In 1974, the property was improved to a 121 bed extended care nursing home. The funds for expansion were made available through a loan obtained from the association. The home makes monthly payments to the association which includes interest on the loan and depreciation. The association accumulated the depreciation for future expansion.

In *Wake County v. Ingle*, 273 N.C. 343, 347, 160 S.E. 2d 62, 65 (1968), our Supreme Court when faced with an analogous situation held:

> "[T]hat the fact that the church maintains and pays expenses connected with its use of the leased property, which is a church building and its appurtenances on Rhamkatte Road, does not prevent the church from occupying this property gratuitously. It pays no rent for the leased property, and merely maintains and pays the expenses connected with its use of the leased property which it must do to use properly the leased property for religious purposes. If the church had owned this leased property and had used it, it would have had to maintain it and pay the expenses connected with its use as church property. To adopt a contrary construction would mean a narrow and stinting construction of the statute. It is clear that if the church were the owner of this property which it uses wholly and exclusively for religious worship, it would be exempt from taxation. It seems to us, and we so hold, that to hold this property in controversy exempt from taxation pursuant to G.S. 105-296(3) comes clearly within the scope and purpose of the language used in that statute, and it clearly comes within the scope and language of the constitutional provision of Article V, section 5, that property held for religious purposes shall be exempt from taxation. Plaintiffs' assignments of error are overruled."

As in *Ingle*, respondent's payment of an amount equivalent to the interest on the loan incurred by Carolina Conference Association

of Seventh-Day Adventists, Inc. for expansion purposes and the depreciation on the property does not prevent respondent from occupying the property gratuitously, and we so hold.

G.S. 105-278.7(a) provides:

"§ 105-278.7. *Real and personal property used for educational, scientific, literary, or charitable purposes.* — (a) Buildings, the land they actually occupy, and additional adjacent land necessary for the convenient use of any such building shall be exempted from taxation if wholly owned by an agency listed in subsection (c), below, and if:

. . . .

(2) Occupied gratuitously by an agency listed in subsection (c), below, other than the owner, and wholly and exclusively used by the occupant for nonprofit educational scientific, literary, or charitable purposes."

G.S. 105-278.7(c)(1) provides:

"(c) The following agencies, when the other requirements of this section are met, may obtain property tax exemption under this section:

(1) A charitable association or institution. . ."

Thus, the determining questions are whether respondent is a charitable institution and whether it used the property in question for charitable purposes.

When presented with a similar situation in *Central Board on Care of Jewish Aged, Inc. v. Henson*, 120 Ga. App. 627, 630, 171 S.E. 2d 747, 750 (1969), the Georgia Court of Appeals held:

"Neither would the fact that the residents paid rent according to their ability destroy the charitable nature of the institution. *Brewer v. American Missionary Association*, 124 Ga. 490, 52 S.E. 804; *Williamson v. Housing Authority of Augusta*, 186 Ga. 673, 199 S.E. 43; *Elder v. Henrietta Egleston Hospital*, 205 Ga. 489, 492, 53 S.E. 2d 751. In the present case it was shown that in 1967, which was stated to be typical of the monthly amounts paid by the residents, more than 50% of the residents paid less than maximum and

of the 61 residents 11 paid nothing. The record further reveals that the payments made by the residents have been insufficient to cover the cost of the direct operating expenses of the home and the deficit was made up by contributions.

The purpose of the home is to care for the aged and provide for their physical and mental welfare. As is stated in *Bozeman Deaconess Foundation v. Ford*, 151 Mont. 143, 148, 439 P. 2d 915, 917: 'The concept of charity is not confined to the relief of the needy and destitute, for "aged people require care and attention apart from financial assistance, and the supply of this care and attention is as much a charitable and benevolent purpose as the relief of their financial wants." ' "

We find the opinion in *Central Board on Care of Jewish Aged, Inc. v. Henson, supra,* persuasive, and we hold that the property in question was properly exempted from *ad valorem* taxes, in that it was being used for a charitable purpose by a charitable institution within the meaning of G.S. 105-278.7(f)(4), G.S. 105-278.7(a)(2), and G.S. 105-278.7(c)(1).

When the record before us is reviewed as a whole, the evidence clearly justifies the Commission's decision. The judgment entered below is

Affirmed.

Judges MARTIN (Robert M.) and WELLS concur.