IN THE MATTER OF: THE APPEAL OF PAVILLON INTERNATIONAL FROM THE DECI-SION OF THE POLK COUNTY BOARD OF EQUALIZATION AND REVIEW CONCERNING PROPERTY TAX EXEMPTION FOR TAX YEAR 2001

No. COA03-1357

(Filed 7 September 2004)

**1. Taxation— ad valorem—exemption for charitable purposes**

The Property Tax Commission did not err by determining that a Michigan nonprofit corporation that operated a residen-tial treatment center in North Carolina for individuals with addictions, disorders, and life crises was exempt from ad valorem taxation pursuant to N.C.G.S. § 105-278.7, because: (1) the com-pany's fee of $12,500 for this type of care was more analogous to the fee range charged by state facilities than the fee range charged by private for-profit institutions; (2) the amount of free care provided by the company was not inconsiderable when compared to the client fees it has generated; (3) while financial ability to pay was one of the admission criteria, clinical appropri-ateness was the primary determinative factor and nobody had been turned down for financial reasons; (4) the company's work benefitted a large segment of the community in other ways besides its care for indigents and those incapable of paying the full price including free training to mental health care profes-sionals across North Carolina, educational services and training to professionals, school systems, and ministers, hosting confer-ences in the state for addiction professionals, and reducing the burden on Polk County in providing mental health care; and (5) in the absence of charitable contributions helping to subsidize client fees, the company would be unable to continue operations.

**2. Taxation— ad valorem—ownership by charitable association or institution**

The Property Tax Commission did not err by determining that a Michigan nonprofit corporation that operated a residential treatment center in North Carolina for individuals with addictions, disorders, and life crises was exempt from ad valorem taxation even though Polk County asserts the company's property was not wholly owned by a charitable association or institution, because the county merely incorporated its previous argument that the company is not operated exclusively for charitable purposes, and the Court of Appeals already found this argument to be without merit.

**3. Taxation— ad valorem—exemption for portion of property**

Although Polk County contends that only the portion of a Michigan nonprofit corporation's property used wholly and exclusively for charitable purposes should be exempt from taxation based on the percentages of indigent care and need-based scholarship funds, the Court of Appeals already rejected this argument.

Appeal by Polk County from decision of the North Carolina Property Tax Commission. Heard in the Court of Appeals 25 May 2004.

*Parker, Poe, Adams & Bernstein, L.L.P., by Charles C. Meeker and Cynthia L. Wittmer, for Polk County, appellant.*

*Nelson, Mullins, Riley, & Scarborough, L.L.P., by Charles H. Mercer, Jr. and Reed J. Hollander, for Pavillon International, appellee.*

CALABRIA, Judge.

Polk County appeals the final decision of the North Carolina Property Tax Commission ("Commission"), which determined Pavillon International ("Pavillon") was exempt from *ad valorem* taxation pursuant to N.C. Gen. Stat. § 105-278.7 (2003). We affirm.

Pavillon, a Michigan nonprofit corporation with a certificate of authority to conduct affairs in North Carolina, operates a residential treatment center in North Carolina for individuals with addictions, disorders, and life crises. Admittance is based on a number of factors with clinical appropriateness being the primary consideration. One of

the programs Pavillon offers is an intensive, residential, closed-group session lasting four weeks. The Commission characterized the program as "occur[ring] in stages [with each] stage address[ing] the personal and unique needs of the individuals that are enrolled." The program incorporates human development, twelve-step, and psychiatric models. Studies indicate that sixty-five percent of the participants in Pavillon's four-week program maintain total abstinence after six months as compared to the industry average of twenty to thirty percent and a state program average of under twenty percent. As of 1 January 2001, Pavillon's four-week program cost $12,500. To help defray the cost of the program, Pavillon reserves ten percent of its beds for indigent individuals and also provides need-based scholarships.

For the 2001 tax year, Pavillon submitted an application seeking to exempt an 8,800 square foot addition from property taxation.[1] Polk County's assessor denied the application, and Pavillon appealed to the Polk County Board of Equalization and Review, which upheld the denial on 15 June 2001. Pavillon appealed to the Commission, which heard the appeal on 16 January 2003 and concluded as a matter of law that Pavillon "did show that the subject property is wholly and exclusively used . . . for a nonprofit charitable purpose" and was engaged in activities "benefit[ting] humanity and a significant segment of the community without the expectation of pecuniary profit or reward." Accordingly, the Commission exempted Pavillon from *ad valorem* taxation. Polk County asserts on appeal that the Commission erred in allowing the exemption because Pavillon (I) failed to show that its real and personal property is "wholly and exclusively used" for charitable purposes, as required by N.C. Gen. Stat. § 105-278.7(a) and (b), (II) failed to show that the property is owned by a "charitable association or institution," as required by N.C. Gen. Stat. § 105-278.7(c), and (III) showed, at most, that only a part of its property is entitled to exemption due to whole and exclusive use for charitable purposes.

The applicable standard of review in an appeal from a decision of the Commission is governed by N.C. Gen. Stat. § 105-345.2 (2003), which provides, in pertinent part, that an appellate court reviews the Commission's findings, inferences, conclusions or decisions to determine whether they are:

---

1. Pavillon's facility was built in two stages. Because the first stage was financed via revenue bonds issued by the North Carolina Medical Care Commission that remained outstanding during the relevant tax period, only taxation of Pavillon's 8,800 square foot addition, which was not financed via such revenue bonds, is at issue in this case.

(1) In violation of constitutional provisions; or

(2) In excess of statutory authority or jurisdiction of the Commission; or

(3) Made upon unlawful proceedings; or

(4) Affected by other errors of law; or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 105-345.2(b) (2003). Such determinations are based upon a "review [of] the whole record or such portions thereof as may be cited by any party . . . ." N.C. Gen. Stat. § 105-345.2(c) (2003). "We will review all questions of law *de novo* and apply the whole record test where the evidence is conflicting to determine if the Commission's decision has any rational basis." *In re Univ. for the Study of Human Goodness & Creative Grp. Work*, 159 N.C. App. 85, 88-89, 582 S.E.2d 645, 648 (2003) (internal citations omitted).

Recently, this Court has reiterated that

The whole record test does not permit the appellate court to substitute its judgment for that of the agency when two reasonable conflicting results could be reached, but it does require the court, in determining the substantiality of evidence supporting the agency's decision, to take into account evidence contradictory to the evidence on which the agency decision relies. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. If the whole record supports the Commission's findings, the decision of the Commission must be upheld.

*Id.*, 159 N.C. App. at 89, 582 S.E.2d at 649 (internal citations and quotation marks omitted).

[1] The primary issue presented in this case is whether the Commission erred in determining Pavillon was entitled to exemption from *ad valorem* taxes pursuant to N.C. Gen. Stat. § 105-278.7(a) (2003), which applies to "[b]uildings, the land they actually occupy, and additional adjacent land necessary for the convenient use of any such building[,]" and N.C. Gen. Stat. § 105-278.7(b) (2003), which applies to personal property. Both subsections provide, in pertinent part, that the subject property "shall be exempted from taxation if

wholly owned by an agency listed in subsection (c), below, and if . . . [w]holly and exclusively used by its owner for nonprofit . . . charitable purposes[.]" N.C. Gen. Stat. § 105-278.7 (a),(b). Subsection (f)(4) defines a charitable purpose as "one that has humane and philanthropic objectives; it is an activity that benefits humanity or a significant rather than limited segment of the community without expectation of pecuniary profit or reward." N.C. Gen. Stat. § 105-278.7(f)(4) (2003). In applying these statutory provisions to the facts of this case, we are mindful that "[w]ith respect to taxation statutes, provisions for exemptions are strictly construed and ambiguities are resolved in favor of taxation. A taxpayer who seeks the benefit of an exemption has the burden of showing that he comes within the exclusion upon which he relies." *Southminster, Inc. v. Justus*, 119 N.C. App. 669, 673-74, 459 S.E.2d 793, 796 (1995). "The rule of strict construction does not, however, require that the statute be 'stintingly or even narrowly construed' or that relevant language in the statute be given other than its plain and obvious meaning." *Id.*, 119 N.C. App. at 674, 459 S.E.2d at 796 (quoting *Wake County v. Ingle*, 273 N.C. 343, 347, 160 S.E.2d 62, 65 (1968)).

Polk County argues Pavillon failed to show that the property at issue was wholly and exclusively used for a charitable purpose. Polk County concedes Pavillon's facility serves a useful and beneficial purpose but contends the cost of treatment limits the segment of the community it benefits such that it cannot be considered charitable. We find Polk County's arguments unpersuasive for numerous reasons. First, the testimony before the Commission revealed that Pavillon's fee of $12,500 for this type of care is more analogous to the fee range of $4,928 to $5,656 charged by state facilities than the fee range of $35,000 to $50,000 charged by private, for-profit institutions. Similar treatment in hospitals within the state, according to further testimony adduced at the hearing, could cost between $28,000 and $56,000 for four weeks.

Second, the amount of free care provided by Pavillon is not inconsiderable when compared to the client fees it has generated. From September 1996 through 1999, Pavillon provided free care in the amount of $1,809,748 ($730,200 for indigent beds and $1,079,548 for partial scholarships) while generating client fees of $5,000,544.[2]

2. Polk County points out that Pavillon's total income in 2000 was $2,283,900 but Pavillon's need-based partial scholarships awarded during that time amounted to only $99,425 (or approximately 4.4 percent of their income). However, we note Pavillon also provided indigent care and Mr. Van Hecke, who facilitated Pavillon's

Polk County seems to argue the $1,079,548 in partial scholarships included capital funds raised for the construction of the addition. However, Mr. Van Hecke expressly affirmed the $1,079,548 represented "scholarship money that [was] used to help pay for people who couldn't otherwise afford the cost[.]" While Mr. Van Hecke also testified that "the contribution of the 1.1 million [dollars]. . . in terms of the accounting" was applied in part to the addition rather than free care, that testimony actually referred to the $1,141,214 in contributions disclosed on the 2001 consolidated financial statement prepared by Arthur Andersen, not the $1,079,548 paid in scholarships.

Third, the testimony before the Commission indicated that, while financial ability to pay is one of the admission criteria, clinical appropriateness was the primary determinative factor, and "nobody [had been] turned down" for financial reasons. This testimony was borne out by Pavillon's exhibits. For example, as noted previously, Pavillon paid a total of $1,809,748 in indigent and scholarship dollars between September of 1996 through 1999. In addition to the ten percent of beds reserved for indigent clients, Pavillon awarded individual scholarships in amounts up to and equivalent to the value of an indigent bed. For example, from January through December 1998, an indigent bed was valued at $8,900 and during that same time period, Pavillon awarded need-based scholarships between $400 and $8,900. From January through December 2002, an indigent bed was valued at $14,500 and during that same time period, Pavillon awarded need-based scholarships between $600 and $14,500. Mr. Van Hecke testified Pavillon tried "to spread [funds from contributors] out to affect as many people as [they could.]" Both in terms of collective dollars spent on need-based scholarships and indigent care and based on individual scholarships granted, the record bears out that clinically appropriate individuals received treatment without regard to ability to pay.

Fourth, Pavillon's work benefitted a large segment of the community in other ways besides its care for indigents and those incapable of paying the full price. For example, Pavillon provides free training to mental health care professionals across North Carolina to "train them in some of the newer methodologies" and "raise the bar

---

move from Canada to North Carolina, testified without contradiction that the records listing the indigent and partial scholarships were neither the most appropriate measure of free care nor the most accurate summary of the amount of free care administered by Pavillon.

of treatment in the state." Pavillon also provides educational services and training to professionals, school systems, and ministers and has hosted conferences in the state for addiction professionals over multiple years, all provided out of its own funds or with grant money received from outside sources. Finally, Harold Bain, the clinical supervisor of the alcohol and drug unit for the Rutherford/Polk Area Mental Health program, affirmed that Pavillon's activities in Polk County "reduce[d] the burden on Polk County in providing mental health care" and without Pavillon's activities, he "would have difficulty placing people and . . . getting [them] care."

Fifth, the testimony before the Commission indicated that, in the absence of charitable contributions helping to subsidize client fees, Pavillon would be unable to continue operations. For the 2001 tax year, Pavillon received $1,141,214 in contributions and $2,982,139 in fees from program participants. Pavillon's 2001 consolidated financial statements reveal Pavillon "experienced a negative cash flow from operations. The ability . . . to continue operations and meet its obligations is dependent on the continued support of its major donors[.]" We find these reasons support Pavillon's claim of entitlement to exemption from *ad valorem* taxes because it was wholly and exclusively used for a charitable purpose.

Our analysis is bolstered by this Court's holding in *In re Taxable Status of Property* that a nonprofit nursing home was a charitable institution and used the property for charitable purposes despite the fact that it charged a fee because the fee requirement was frequently ignored. *Id.,* 45 N.C. App. 632, 263 S.E.2d 838 (1980). This Court found persuasive that the payments by residents were insufficient to cover the cost of the direct operating expenses of the home and the deficit was made up by contributions. *Id. In re Appeal of Barham*, 70 N.C. App. 236, 319 S.E.2d 657 (1984) and *In re Chapel Hill Residential Retirement Center*, 60 N.C. App. 294, 299 S.E.2d 782 (1983), cited by Polk County in support of its arguments, are distinguishable. Both cases involved retirement centers seeking to qualify as exempt from *ad valorem* taxes on the grounds that the property was used for charitable purposes. *Id.* In *Chapel Hill*, this Court distinguished *Taxable Status* and upheld the denial of exemption on the grounds that *Taxable Status* "involved property owners who were receiving and relying upon donations from outside sources for the operation of their programs." *Chapel Hill*, 60 N.C. App. at 304, 299 S.E.2d at 788. In *Barham*, this Court noted "that the funding for the every day operation of the project will come mainly from the funds paid in by the

residents" and observed "only a small percentage of the elderly could feasibly participate in [the] retirement center." *Barham*, 70 N.C. App. at 243-44, 319 S.E.2d at 661. As in *Taxable Status* and in contrast to *Barham* and *Chapel Hill*, Pavillon's operation is dependent on the receipt of charitable donations from outside sources for its programs and, through need-based partial scholarships and full indigent scholarships, it has never turned anyone away due to financial inability. This assignment of error is overruled.

[2] In its second assignment of error, Polk County asserts Pavillon's property is not wholly owned by a charitable association or institution because charitable or religious corporations, as defined in N.C. Gen. Stat. § 55A-1-40(4) (2003), are required to be "organized exclusively for one or more of the purposes specified in section 501(c)(3) of the Internal Revenue Code of 1986 or any successor section[,]" which includes charitable purposes. Assuming *arguendo* N.C. Gen. Stat. § 55A-1-40(4) provides the applicable definition, Polk County merely incorporates its previous argument that Pavillon is not operated exclusively for charitable purposes. Because we have already found this argument to be without merit, this assignment of error is overruled.

[3] In its third and final assignment of error, Polk County alternatively argues that, if this Court determines that some portion of Pavillon's property is wholly and exclusively used for charitable purposes, only that portion should be exempt from taxation. Polk County incorporates its previous discussion regarding the percentages of indigent care and need-based scholarship funds. Having already rejected this argument, we overrule this assignment of error.

Pavillon assigns as error the Commission's failure to exempt Pavillon from *ad valorem* taxes on the grounds that it meets the requirements of N.C. Gen. Stat. § 105-278.8. Because we find the Commission correctly determined that Pavillon was exempt under N.C. Gen. Stat. § 105-278.7, we need not address this assignment of error.

Affirmed.

Judges WYNN and LEVINSON concur.