IN THE MATTER OF: THE APPEAL OF TOTSLAND PRESCHOOL, INC. FROM THE DECISION OF THE BEAUFORT COUNTY BOARD OF COMMISSIONERS CONCERNING PROPERTY TAX EXEMPTION FOR TAX YEAR 2003

No. COA05-1663

(Filed 7 November 2006)

## 1. Taxation— property tax exemption—government-funded child care services—charitable purpose

The Property Tax Commission's conclusion that Totsland Preschool was entitled to a property tax exemption pursuant to N.C.G.S. § 105-278.7 was supported by the evidence. Totsland's activities are provided for the benefit of the community at large, without the expectation of pecuniary profit or reward; the fact that the bulk of Totsland's funding comes from government sources is not controlling, as the use to which the property is dedicated ultimately controls exemption from taxation.

IN RE APPEAL OF TOTSLAND PRESCHOOL, INC.

[180 N.C. App. 160 (2006)]

**2. Appeal and Error— preservation of issues—issue not raised before Property Tax Commission**

A county waived an argument about a property tax exemption on appeal by not raising it before the Property Tax Commission.

Appeal by Beaufort County from the Final Decision entered 30 June 2005 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 16 August 2006.

*C. B. McLean, Jr., for appellant.*

*Legal Aid of North Carolina, Inc., by Evan Lewis and Robert W. Waddell, for appellee.*

JACKSON, Judge.

Totsland Preschool, Inc., ("Totsland") is incorporated with the State of North Carolina as a nonprofit corporation, pursuant to North Carolina General Statutes, Chapter 55A. Totsland has operated for over thirty years in Beaufort County, providing child care services to the community in and around Belhaven, North Carolina. In 1983, Totsland received federal tax-exempt status under section 501(c)(3) of the Internal Revenue Code, although at the time it was operating under a different name. Prior to 2001, Totsland had been renting the facility out of which it operated, and the facility had flooded on numerous occasions. In 2001, Totsland received funding from the federal government's Rural Development agency and the Z. Smith Reynolds Foundation, a private nonprofit foundation, so that Totsland could build its own new and larger facility. The new facility was completed and dedicated in November 2002. Totsland was the sole owner and occupier of the new facility which is the subject of the instant case.

Totsland applied to the Beaufort County Tax Assessor for an exemption from property taxes for its new facility, pursuant to North Carolina General Statutes, section 105-278.4, on the basis that the property was wholly and exclusively used for educational purposes. The County Tax Assessor denied Totsland's application, which Totsland then appealed to the Beaufort County Board of Commissioners ("Board"). The Board upheld the County Tax Assessor's denial of Totsland's application for exemption, and Totsland proceeded with appealing the Board's decision to the North Carolina Property Tax Commission ("Commission").

IN RE APPEAL OF TOTSLAND PRESCHOOL, INC.

[180 N.C. App. 160 (2006)]

In its Notice of Appeal to the Commission, Totsland sought exemption of its real property pursuant to section 105-278.4, but later was permitted to amend its Application for Hearing to include a statement that it was entitled to an exemption from property taxes pursuant to section 105-278.7. On 17 February 2005, the Commission heard testimony and arguments from the parties on the question of whether Totsland was entitled to an exemption pursuant to section 105-278.7. In its final decision entered 30 June 2005, the Commission reversed the decision of the Beaufort County Board of Commissioners, and granted Totsland's application for property tax exemption for tax year 2003, pursuant to section 105-278.7. The Commission held that Totsland showed that the subject property was wholly and exclusively used by its owner for a nonprofit charitable purpose, and that the subject property was entitled to an exemption from *ad valorem* taxation pursuant to section 105-278.7. Beaufort County appeals from the final decision of the Commission.

Appeals from decisions of the Property Tax Commission are governed by North Carolina General Statutes, section 105-345.2, which provides in pertinent part that:

The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of statutory authority or jurisdiction of the Commission; or

(3) Made upon unlawful proceedings; or

(4) Affected by other errors of law; or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 105-345.2(b) (2005). This Court's determinations are based on a "review [of] the whole record or such portions thereof as may be cited by any party." N.C. Gen. Stat. § 105-345.2(c) (2005). However, " '[w]e will review all questions of law *de novo* and apply the whole record test where the evidence is conflicting to determine

if the Commission's decision has any rational basis.' " *In re Appeal of Pavillon Int'l*, 166 N.C. App. 194, 197, 601 S.E.2d 307, 308 (2004) (quoting *In re Univ. for the Study of Human Goodness & Creative Grp. Work*, 159 N.C. App. 85, 88-89, 582 S.E.2d 645, 648 (2003)).

Under a *de novo* review, this Court "considers the matter anew and freely substitutes its own judgment for that of the Commission." *In re Appeal of the Greens of Pine Glen Ltd. Part.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003). An appellate court may not replace the Tax Commission's judgment with its own judgment when there are two reasonably conflicting views of the evidence. *In re Appeal of Perry-Griffin Foundation*, 108 N.C. App. 383, 393, 424 S.E.2d 212, 218 (1993). Instead, when there are two reasonably conflicting results which could be reached, this Court is required,

> "in determining the substantiality of evidence supporting the agency's decision, to take into account evidence contradictory to the evidence on which the agency decision relies. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. If the whole record supports the Commission's findings, the decision of the Commission must be upheld."

*Pavillon*, 166 N.C. App. at 197, 601 S.E.2d at 308 (quoting *In re Univ. for the Study of Human Goodness & Creative Grp. Work*, 159 N.C. App. at 89, 582 S.E.2d at 648).

[1] Here, the primary issue before this Court is whether Totsland is entitled to exemption from *ad valorem* taxes pursuant to North Carolina General Statutes, section 105-278.7. Section 105-278.7 provides that:

> (a) Buildings, the land they actually occupy, and additional adjacent land necessary for the convenient use of any such building shall be exempted from taxation if wholly owned by an agency listed in subsection (c), below, and if:
>
> (1) Wholly and exclusively used by its owner for nonprofit educational, scientific, literary, or charitable purposes as defined in subsection (f), below[.]

N.C. Gen. Stat. § 105-278.7(a) (2005). Subsection (c)(1) of section 105-278.7 further provides that a charitable association or institution may obtain a property tax exemption when the other requirements of 105-278.7 have been met. N.C. Gen. Stat. § 105-278.7(c)(1) (2005). The

statute defines an "educational purpose" as "one that has as its objective the education or instruction of human beings; it comprehends the transmission of information and the training or development of the knowledge or skills of individual persons." N.C. Gen. Stat. § 105-278.7(f)(1) (2005). A "charitable purpose" is defined as "one that has humane and philanthropic objectives; it is an activity that benefits humanity or a significant rather than limited segment of the community without expectation of pecuniary profit or reward." N.C. Gen. Stat. § 105-278.7(f)(4) (2005).

Statutory provisions providing for exemptions from taxes are to be strictly construed, and all ambiguities are to be resolved in favor of taxation. *Pavillon,* 166 N.C. App. at 198, 601 S.E.2d at 309; *Southminster, Inc. v. Justus,* 119 N.C. App. 669, 673-74, 459 S.E.2d 793, 796 (1995). "A taxpayer who seeks the benefit of an exemption has the burden of showing that he comes within the exclusion upon which he relies." *Southminster,* 119 N.C. App. at 674, 459 S.E.2d at 796. Thus, in the instant case Totsland bore the burden of proving to the Commission that it was entitled to an exemption from *ad valorem* taxes pursuant to section 105-278.7. On appeal, Beaufort County specifically contends Totsland failed to satisfy its burden of proving that the subject property was being used "wholly and exclusively" for a charitable purpose, as required by section 105-278.7(a)(1).

The first step in an analysis under section 105-278.7(a) is to determine that the entity seeking an exemption qualifies as one of the types of agencies entitled to an exemption pursuant to section 105-278.7(c). Section 105-278.7(c)(1) provides that "[a] charitable association or institution" may obtain a property tax exemption where it has met the requirements of section 105-278.7. N.C. Gen. Stat. § 105-278.7(c)(1) (2005). We review this issue using the whole record test, and based upon the evidence contained in the record on appeal, there is no question that Totsland qualifies as a charitable entity. Totsland's status as a charitable entity is clearly established by the fact that it incorporated under our state's Non-Profit Corporation Act, by filing its Articles of Incorporation with the Secretary of State on 18 September 1981. The Articles state that Totsland's purpose is to "[p]rovide for employed, unemployed and social welfare parents a safe, clean and quality care program for their children[, and to] [p]rovide social, emotional, psychological and educational growth and development for the youngsters." Totsland's Bylaws, adopted 5 November 2000 provide:

**IN RE APPEAL OF TOTSLAND PRESCHOOL, INC.**

[180 N.C. App. 160 (2006)]

The corporation is a non-profit corporation organized exclusively for charitable and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986. The corporation's purposes are:

1. to provide a quality care program for children;

2. to provide social, emotional, psychological, education growth and development;

3. [t]o carry on any on any [sic] activity and perform all acts which may be deemed necessary or expedient in the accomplishment of those purposes and other such charitable works.

Also, the federal government recognizes Totsland as a nonprofit organization, and has classified it as a 501(c)(3) tax-exempt organization under the Internal Revenue Code since January 1983. Our State's Department of Revenue also recognizes this status, as evidenced by the fact that Totsland is exempt from sales tax, and is entitled to a reimbursement of sales tax paid. Thus, we find there is substantial evidence to support the Commission's conclusion that Totsland qualifies as an organization found in section 105-278.7(c), and thus it is entitled to an exemption from *ad valorem* taxes if it is able to satisfy the remaining requirements of section 105-278.7.

Beaufort County argues that Totsland's use of the subject property does not constitute a charitable purpose as defined by section 105-278.7. The County argued to the Commission, as it does on appeal, that there are no appellate cases in our State pursuant to which a community day care center was allowed an exemption from *ad valorem* taxes based upon a day care center being considered a charitable entity or the provision of day care being considered a charitable purpose. The County contends that although Totsland's clients are not required to pay the full amount of the cost of day care, the cost of care is not supplemented by private charitable contributions. Totsland, in fact, does not receive the bulk of its funding from private contributions, but instead is supported primarily by government funding. While this may be true, we do not agree with the County's assertion that a community day care center, particularly one primarily supported through government funding, should never be considered a charitable entity operating with a charitable purpose.

Whether or not Totsland has a charitable purpose, as defined by the statute, is a question of law, and thus we consider the matter

under a *de novo* review. We review the Commission's finding that Totsland uses the subject property for a charitable purpose under the whole record test.

In *In re Appeal of Pavillon Int'l*, 166 N.C. App. 194, 601 S.E.2d 307 (2004), this Court considered the issue of whether a residential treatment center was considered to have a charitable purpose pursuant to section 105-278.7. In *Pavillon*, the residential treatment center operated on a fee basis, and charged rates significantly lower than those charged by similar private, for-profit institutions. *Id.* at 198, 601 S.E.2d at 309. The treatment center provided scholarships and a considerable amount of free care. *Id.* at 198-99, 601 S.E.2d at 309. Individuals who were unable to pay for the care were not turned away for financial reasons, and instead the scholarships and free care were provided by way of private contributions received by Pavillon. *Id.* at 199, 601 S.E.2d at 309-10. The Court held that Pavillon's work benefitted a large segment of the community by serving individuals who were incapable of paying the full price of care, and that in the absence of the charitable contributions, Pavillon would not be able to continue to operate. *Id.* at 199-200, 601 S.E.2d at 310. The Court went on to hold that the subject property used by Pavillon was used wholly and exclusively for a charitable purpose, thereby entitling Pavillon to an exemption from *ad valorem* taxes. *Id.* at 200, 601 S.E.2d at 310.

In the instant case, Totsland provides day care services to the children of low-income individuals. The day care services are offered at significantly reduced rate to the parents, all of whom qualify for government subsidies. The parents are required only to pay a small portion of the cost of the day care services, and the county Department of Social Services ("DSS") provides subsidies for the remaining portion of the cost of care. Totsland's services are not limited to a specific segment of the community, and are available to parents in three counties. Totsland does not have any control over how much it charges for day care services, or how much each parent is required to pay, as the cost of its day care services is set by DSS. In addition, Totsland does not operate its child care center for the purpose of making money, and it is not engaged in commercial competition with other area child care centers.

Totsland's executive director testified before the Commission that the income generated by the parents' fees accounted for only ten percent of the organization's income, and that the government funding accounted for the bulk of the remaining ninety percent. The min-

IN RE APPEAL OF TOTSLAND PRESCHOOL, INC.

[180 N.C. App. 160 (2006)]

imal income generated from the parents' fees is insufficient to cover the direct operating costs of the organization, and the deficit therefore is made up by the payments received from DSS. The organization's executive director and volunteer board of directors do not receive any benefit when the organization does make a profit, as any excess in income over expenses is retained and applied to the following year's expenses. In fact, the executive director has gone for several months at a time without receiving a salary so that the organization would be able to pay its other expenses.

In addition to daycare services, Totsland provides a number of other services to the community at large, free of charge. The organization provides job training to youth, along with an after school program for children up to age twelve. Totsland also offers educational programs for parents, and works to educate them on various issues and on resources available in the community. Totsland serves as a referral source for parents so that they can learn what services are available to them. While Totsland relies heavily on government funding, and would not be able to continue to operate absent the government funding, it also relies on donations of equipment from other area nonprofit organizations, and on the services of volunteers.

In *K.I.D.S. House Inc. v. County of Sherburne*, 1994 Minn. Tax LEXIS 65 (Minn. T.C. Dec. 30, 1994), the Minnesota Tax Court determined that a nonprofit organization which operated a group home for adolescent girls, qualified for a property tax exemption based on its being operated as a purely public charity pursuant to Minnesota statutes. We recognize that *K.I.D.S. House* is not controlling on the instant case, however we find it to be instructive. In *K.I.D.S. House*, the Tax Court held that although K.I.D.S. House received the bulk of its income through government subsidies and contracts, the contributions of time and in-kind donations which were provided by volunteers, when combined with the actual support and funding it received, was sufficient to minimally satisfy the requirement that the organization be supported by donations and gifts in whole or in part. In the instant case, all parties agree that Totsland receives minimal cash donations. However, it did receive over $300,000.00 in grants and contributions from the U.S. Department of Agriculture and the Z. Smith Reynolds Foundation, and the organization's own executive director has essentially volunteered her time for numerous months when she worked without receiving compensation. The organization also receives in-kind donations and is aided by the support of several volunteers in addition to its volunteer board of directors.

Beaufort County places great importance on the fact that the bulk of Totsland's funding comes from government sources, rather than private contributions. We do not find this fact to be controlling as to whether or not Totsland's activities constitute a charitable purpose, as it has long been the use to which the subject property is dedicated that ultimately controls whether the property would be entitled to an exemption from taxation. *See In re Univ. for the Study of Human Goodness & Creative Grp. Work*, 159 N.C. App. at 90-91, 582 S.E.2d at 649; *In re Wake Forest University*, 51 N.C. App. 516, 520, 277 S.E.2d 91, 94 (1981); *see also, In re Taxable Status of Property*, 45 N.C. App. 632, 263 S.E.2d 838 (1980) (court upheld property tax exemption for nursing home pursuant to section 105-278.7, even when nursing home received Medicare payments to pay for much of the patients' care). Where, as in the present case, a nonprofit corporation receives government funding, which it in turn uses for a charitable purpose, we hold the purpose of the activities and the actual use of the funds to be the controlling factors, rather than the source of the funds.

Based upon the evidence presented to the Commission, we hold the activities conducted by Totsland are provided for the benefit of the community at large, and are done so without expectation of pecuniary profit or reward. Therefore, we hold, based on the facts specific to the instant case, Totsland satisfied its burden of showing that the activities conducted in the subject property were for charitable purpose as defined in section 105-278.7. The Commission's conclusion to that effect is supported by the evidence contained in the record, and Beaufort County's assignment of error is overruled.

[2] In its final argument, Beaufort County argues that Totsland failed to prove that it had a charitable purpose and use of the subject property prior to 1 January 2003. The County contends that in order to qualify for an exemption from *ad valorem* taxes for the tax year 2003, Totsland was required to show that it had a charitable purpose and charitable use of the property prior to 1 January 2003.

We find no merit in the County's argument, and further we hold the County has waived this argument on appeal since the County failed to raise this issue before the Commission prior to this appeal. "This Court has long held that issues and theories of a case not raised below will not be considered on appeal." *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjust.*, 354 N.C. 298, 309, 554 S.E.2d 634, 641 (2001); *see also Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934) (where theory argued on appeal was not raised before the trial court, "the law does not permit parties to swap horses between

**IN RE S.N.**

[180 N.C. App. 169 (2006)]

courts in order to get a better mount" before an appellate court); *Tate Terrace Realty Investors, Inc. v. Currituck County*, 127 N.C. App. 212, 224, 488 S.E.2d 845, 852, *disc. review denied*, 347 N.C. 409, 496 S.E.2d 394 (1997). In the instant case, Beaufort County failed to argue to the Commission the issue of whether or not Totsland made charitable use of the subject property prior to 1 January 2003, as it now argues on appeal. Therefore, this assignment of error is dismissed.

Affirmed.

Judges CALABRIA and GEER concur.