IN THE MATTER OF: APPEAL OF: EAGLE'S NEST FOUNDATION FROM THE ORDER OF THE TRANSYLVANIA COUNTY BOARD OF COUNTY COMMISSIONERS CONCERNING TAX EXEMPT STATUS FOR TAX YEAR 2006

No. COA08-316

(Filed 6 January 2009)

**1. Taxation— ad valorem—exemption denied—summer camp and school—primarily recreational rather than educational**

The Property Tax Commission did not err by affirming the denial of an exemption from ad valorem property taxes by the local Board of Equalization and Review where the taxpayer operated a summer camp and winter school and claimed that it exclusively dedicated its property to educational endeavors. The summer use was primarily recreational; any educational aspect was incidental to the recreational purposes. N.C.G.S. § 105-278.4.

**2. Taxation— ad valorem—exemption denied—summer camp and school—not charitable**

The Property Tax Commission did not err by affirming the denial of an exemption from ad valorem property taxes by the local Board of Equalization and Review where the taxpayer contended that it was a charitable association or institution. The conclusion that the taxpayer did not meet its burden of proving that it is a charitable association or institution was supported by substantial evidence about the finances of the summer camp and winter high school operated by the taxpayer.

Appeal by taxpayer from Final Decision entered 21 December 2007 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 11 September 2008.

*Bell, Davis & Pitt, P.A., by John A. Cocklereece and Kevin G. Williams, for Taxpayer-Appellant.*

*Parker Poe Adams & Bernstein LLP, by Charles C. Meeker, for Appellee, Transylvania County.*

STEPHENS, Judge.

Taxpayer Eagle's Nest Foundation ("Foundation") appeals a decision of the Property Tax Commission ("Commission") affirming the decision of the Transylvania County Board of Equalization and Review which denied the Foundation's request to be exempt from *ad*

IN RE APPEAL OF EAGLE'S NEST FOUND.

[194 N.C. App. 770 (2009)]

*valorem* property taxes. Because the Foundation's property is not "wholly and exclusively" used for educational purposes, N.C. Gen. Stat. § 105-278.4 (2005), and because the Foundation is not a "charitable association or institution[,]" N.C. Gen. Stat. § 105-278.7 (2005), we affirm.

## BACKGROUND

The Foundation applied to the County's tax assessor for a property tax exemption for the 2006 tax year. The assessor denied the Foundation's request, and the Board of Equalization and Review affirmed the assessor's decision. The Foundation appealed to the Commission, contending that its property was exempt under Sections 105-278.4 and 105-278.7. The Commission heard the appeal on 15 November 2007. At the conclusion of the Foundation's evidence, the County moved to dismiss on the ground that the Foundation failed to carry its burden of showing entitlement to an exemption. On 21 December 2007, the Commission entered a Final Decision which contained the following findings of fact:

1. Eagle's Nest Foundation is a non-profit corporation organized under the laws of the State of North Carolina. The Foundation has been granted exemption from Federal income taxes under Section 501(c)(3) of the Internal Revenue Code since at least December 1, 1994. The Foundation and its predecessor camp have been in existence for decades but never have been exempt from *ad valorem* taxation in North Carolina.

2. The Foundation runs three programs: (a) a summer camp called Eagle's Nest Camp; (b) a two-semester winter 10th grade school called the Outdoor Academy, and (c) Hante[,] which sponsors trips outside of Transylvania County including travel overseas.

3. Eagle's Nest Camp has a capacity of 158 campers per session and serves over 300 campers each summer. The winter school has a capacity of 35 students per semester. The most students attending the school during any one semester was 32.

4. Eagle's Nest Camp uses all the buildings and land owned by the Foundation in Transylvania County.

5. The Foundation's facilities are typical for those of a summer camp—cabins for sleeping, a lake for swimming, three ponds for water activities, horses for riding and large natural

areas for a variety of outdoor activities. The summer camp's activities include hiking, swimming, canoeing, horse riding, tennis, and all kinds of arts, crafts and music. The summer camp also emphasizes community building and fellowship.

6. While the winter school is accredited as a school, Eagle's Nest Camp is not accredited as a school. Rather[,] the summer camp is accredited by the American Camp Association. Many of the Camp's counselors are college students.

7. The Eagle's Nest Camp director testified that each camper is assigned to four activities which are intended to be part of the Foundation's philosophy to provide "experiential education." These activities include sports, crafts, art, music and the like. The director also testified that (a) grades are not given for the activities, (b) the activities do not count as course work for schools, and (c) there is no standardized end-of-activity testing. The winter school, on the other hand, does have course work and studies typical of a high school.

8. Eagle's Nest Camp provides a varied and interesting summer camping experience including recreation, arts, crafts, music and fellowship. The Eagle's Nest brochure refers to the summer attendees as "campers."

9. The charge for Eagle's Nest Camp is approximately $150 per day per camper, which is within the range of what other nearby summer camps charge.

10. For the year ending December 31, 2005, the Eagle's Nest Camp revenues were $1,137,000.68. The total expenses were $746,892.61. The surplus was $390,108.07. After interfund transfers to the Foundation, the net surplus for the camp was $135,715.88. The Foundation periodically has conducted capital campaigns to acquire land and build structures. The Foundation also requests contributions for operating expenses each year.

11. Eagle's Nest Camp in 2005 made charge reductions of $106,179 for "referral discounts" to families referring other campers to the Camp and for other business purposes. Financial assistance to campers for that year was about $20,000, which was approximately 2% of the Camp's revenues.

Primarily on these findings, the Commission granted the County's motion to dismiss the appeal, affirmed the Board's decision, and

denied the Foundation's request for an exemption. The Foundation appealed to this Court.

*ANALYSIS*

In appeals to the Commission, the taxpayer bears the burden of proving that its property is entitled to an exemption under the law. *In re Appeal of Southeastern Baptist Theological Seminary, Inc.*, 135 N.C. App. 247, 520 S.E.2d 302 (1999). "This burden is substantial and often difficult to meet because all property is subject to taxation unless exempted by a statute of statewide origin." *In re Appeal of Atl. Coast Conference*, 112 N.C. App. 1, 4, 434 S.E.2d 865, 867 (1993) (citation omitted), *aff'd per curiam*, 336 N.C. 69, 441 S.E.2d 550 (1994). "Statutory provisions providing for exemptions from taxes are to be strictly construed, and all ambiguities are to be resolved in favor of taxation." *In re Appeal of Totsland Preschool, Inc.*, 180 N.C. App. 160, 164, 636 S.E.2d 292, 295 (2006) (citing *In re Appeal of Pavillon Int'l*, 166 N.C. App. 194, 198, 601 S.E.2d 307, 309 (2004); *Southminster, Inc. v. Justus*, 119 N.C. App. 669, 673-74, 459 S.E.2d 793, 796 (1995)).

On appeal, the standard of review for a decision of the Commission is controlled by Section 105-345.2 of our General Statutes. N.C. Gen. Stat. § 105-345.2 (2005). *See also In re Appeal of Southview Presbyterian Church*, 62 N.C. App. 45, 302 S.E.2d 298 (describing the scope of review as dictated by Section 105-345.2), *disc. review denied*, 309 N.C. 820, 310 S.E.2d 354 (1983). Subsection (b) of that statute provides, in part, that the appellate court "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action." N.C. Gen. Stat. § 105-345.2(b) (2005). Subsection (b) further provides that the appellate court may grant various forms of relief

if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of statutory authority or jurisdiction of the Commission; or

(3) Made upon unlawful proceedings; or

(4) Affected by other errors of law; or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 105-345.2(b). Pursuant to subsection (c), the appellate court must "review the whole record or such portions thereof as may be cited by any party and due account shall be taken of the rule of prejudicial error." N.C. Gen. Stat. § 105-345.2(c) (2005).

Under the "whole record test," this Court may not "substitute its judgment for that of the agency when two reasonable conflicting results could be reached[.]" *Southview*, 62 N.C. App. at 47, 302 S.E.2d at 299. "While the weighing and evaluation of the evidence is in the exclusive province of the Commission, where the evidence is conflicting, the appellate court must apply the 'whole record' test to determine whether the administrative decision has a rational basis in the evidence." *Id.* (internal citations and citation omitted). In evaluating whether the record supports the Commission's decision, "this Court must evaluate whether the decision is supported by substantial evidence, and if it is, the decision cannot be overturned." *In re Appeal of Interstate Income Fund I*, 126 N.C. App. 162, 165, 484 S.E.2d 450, 452 (1997) (citing *In re Appeal of Perry-Griffin Found.*, 108 N.C. App. 383, 394, 424 S.E.2d 212, 218, *disc. review denied*, 333 N.C. 538, 429 S.E.2d 561 (1993)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State ex rel. Comm'r of Ins. v. N.C. Fire Ins. Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977) (citation omitted).

### Section 105-278.4

[1] The Foundation first argues that the Commission erred in concluding that the Foundation is not entitled to an exemption under N.C. Gen. Stat. § 105-278.4. That statute provides, in part:

(a) Buildings.—Buildings, the land they actually occupy, and additional land reasonably necessary for the convenient use of any such building shall be exempted from taxation if all of the following requirements are met:

(1) Owned by either of the following:

a. An educational institution; or

b. A nonprofit entity for the sole benefit of a constituent or affiliated institution of The University of North

Carolina, an institution as defined in G.S. 116-22, a North Carolina community college, or a combination of these;

(2) The owner is not organized or operated for profit and no officer, shareholder, member, or employee of the owner or any other person is entitled to receive pecuniary profit from the owner's operations except reasonable compensation for services;

(3) Of a kind commonly employed in the performance of those activities naturally and properly incident to the operation of an educational institution such as the owner; and

(4) Wholly and exclusively used for educational purposes by the owner or occupied gratuitously by another nonprofit educational institution and wholly and exclusively used by the occupant for nonprofit educational purposes.

(b) Land.—Land (exclusive of improvements); and improvements other than buildings, the land actually occupied by such improvements, and additional land reasonably necessary for the convenient use of any such improvement shall be exempted from taxation if:

(1) Owned by an educational institution that owns real property entitled to exemption under the provisions of subsection (a), above;

(2) Of a kind commonly employed in the performance of those activities naturally and properly incident to the operation of an educational institution such as the owner; and

(3) Wholly and exclusively used for educational purposes by the owner or occupied gratuitously by another nonprofit educational institution (as defined herein) and wholly and exclusively used by the occupant for nonprofit educational purposes.

. . . .

(f) Definitions.—The following definitions apply in this section:

(1) Educational institution.—The term includes a university, a college, a school, a seminary, an academy, an

industrial school, a public library, a museum, and similar institutions.

(2) Educational purpose.—A purpose that has as its objective the education or instruction of human beings; it comprehends the transmission of information and the training or development of the knowledge or skills of individual persons. The operation of a student housing facility, a student dining facility, a golf course, a tennis court, a sports arena, a similar sport property, or a similar recreational sport property for the use of students or faculty is also an educational purpose, regardless of the extent to which the property is also available to and patronized by the general public.

N.C. Gen. Stat. § 105-278.4. The Foundation contends that it met its burden of proof under this statute because, *inter alia*, it "exclusively dedicates its property to educational endeavors." We disagree.

The record contains substantial evidence that the Foundation's property is not "wholly and exclusively" used for educational purposes. Indeed, during the summer months when the Foundation operates Eagle's Nest Camp, the Foundation's property is primarily used for recreational purposes. The Camp's brochure, which refers to Camp attendees as "campers," states that "[a]ctivities at Eagle's Nest Camp are driven by the landscape. A fresh, clean lake, green meadows, gardens, orchards, hilltops, trails, forests, streams, rivers and mountains provide campers with unlimited *recreation* opportunities." (Emphasis added.) Activities at the Camp include, among others, rock climbing, arts and crafts, whitewater paddling, ceramics, photography, woodworking, archery, horseback riding, and swimming. As the Commission concluded, any educational aspect of these activities is incidental to the activities' recreational purposes. The Commission properly concluded that the Foundation did not meet its burden of proof under Section 105-278.4.

*Section 105-278.7*

[2] The Foundation next argues that the Commission erred in concluding that the Foundation is not entitled to an exemption under N.C. Gen. Stat. § 105-278.7. That statute provides, in part:

(a) Buildings, the land they actually occupy, and additional adjacent land necessary for the convenient use of any such building

shall be exempted from taxation if wholly owned by an agency listed in subsection (c), below, and if:

(1) Wholly and exclusively used by its owner for nonprofit educational, scientific, literary, or charitable purposes as defined in subsection (f), below; or

(2) Occupied gratuitously by an agency listed in subsection (c), below, other than the owner, and wholly and exclusively used by the occupant for nonprofit educational, scientific, literary, charitable, or cultural purposes.

. . . .

(c) The following agencies, when the other requirements of this section are met, may obtain property tax exemption under this section:

(1) A charitable association or institution.

. . . .

(f) Within the meaning of this section:

(1) An educational purpose is one that has as its objective the education or instruction of human beings; it comprehends the transmission of information and the training or development of the knowledge or skills of individual persons.

. . . .

(4) A charitable purpose is one that has humane and philanthropic objectives; it is an activity that benefits humanity or a significant rather than limited segment of the community without expectation of pecuniary profit or reward.

N.C. Gen. Stat. § 105-278.7. The Foundation argues, *inter alia*, that it is a "charitable association or institution." Again, we disagree.

"The first step in an analysis under section 105-278.7(a) is to determine that the entity seeking an exemption qualifies as one of the types of agencies entitled to an exemption pursuant to section 105-278.7(c)." *Totsland*, 180 N.C. App. at 164, 636 S.E.2d at 295. Relying exclusively on *Totsland*, the Foundation argues that it is an agency entitled to an exemption because its articles of incorporation and bylaws state that the Foundation is to "use its funds exclusively

for . . . charitable purposes[,]" and because the Foundation is exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code. Although the *Totsland* Court concluded that the taxpayer in that case was a charitable institution based in part on the purposes stated in the taxpayer's organizational documents and on the fact that the taxpayer was a 501(c)(3) organization, the *Totsland* Court also noted that the taxpayer

> provides day care services to the children of low-income individuals. The day care services are offered at significantly reduced rate[s] to the parents, all of whom qualify for government subsidies. The parents are required only to pay a small portion of the cost of the day care services, and the county Department of Social Services ("DSS") provides subsidies for the remaining portion of the cost of care. Totsland's services are not limited to a specific segment of the community, and are available to parents in three counties. Totsland does not have any control over how much it charges for day care services, or how much each parent is required to pay, as the cost of its day care services is set by DSS. In addition, Totsland does not operate its child care center for the purpose of making money, and it is not engaged in commercial competition with other area child care centers.

*Id.* at 166, 636 S.E.2d at 297. In the case at bar, by contrast, the Foundation operates a semester-long school for select high school students, charging each student approximately $15,000.00 per semester. The Foundation also operates a camp which, according to the Foundation's executive director, charged campers "[m]arket rate[.]" Furthermore, the Commission found that the Camp charged its campers $150.00 per day and that, from the Camp's revenue of $390,108.07, the Foundation provided only about $20,000.00, or approximately 2% of the Camp's revenues, to campers in the form of financial aid. Finally, although neither "charitable association" nor "charitable institution" are defined in Section 105-278.7, "charitable purpose" is defined as a purpose "that has humane and philanthropic objectives; it is an activity that benefits humanity or a significant rather than limited segment of the community without expectation of pecuniary profit or reward." N.C. Gen. Stat. § 105-278.7(f)(4) (2005). The Commission's conclusion that the Foundation did not meet its burden of proving that it is a charitable association or institution is supported by substantial evidence in the record. The Foundation, therefore, is not entitled to a property tax exemption under Section 105-278.7.

The Commission's decision is

AFFIRMED.

Judges STEELMAN and GEER concur.