IN THE MATTER OF: APPEAL OF THE MASTER'S MISSION FROM THE DECISION OF THE GRAHAM COUNTY BOARD OF EQUALIZATION AND REVIEW CONCERNING PROPERTY TAX FOR TAX YEAR 1997

No. COA01-990

(Filed 3 September 2002)

**1. Taxation— ad valorem—non-profit corporation—educational exemption**

A whole record review reveals that the Property Tax Commission did not err by affirming a county board's decision finding that 100 acres owned by taxpayer non-profit corporation to train missionaries were exempt from ad valorem taxation but that the taxpayer did not meet its burden of proving that its 1,247 acres similarly owned were entitled to an educational tax exemption under N.C.G.S. § 105-278.4, because: (1) in deciding whether something qualifies as an educational purpose, our courts have consistently held that it is not the nature of the character of the owning entity which ultimately determines whether property shall be exempt from taxation, but it is the use to which the property is dedicated which controls; (2) taxpayer did not show that all of its buildings or the camping area are used wholly and exclusively for educational purposes; and (3) taxpayer failed to show that it requires more than 100 acres to buffer it from encroaching urbanization, development, or other forces that might compromise its educational purpose.

**2. Appeal and Error— preservation of issues—failure to address in assignment of error**

Although taxpayer non-profit corporation contends that the Property Tax Commission erred when it displayed unfairness and

**IN RE APPEAL OF THE MASTER'S MISSION**

[152 N.C. App. 640 (2002)]

prejudice to the taxpayer, this argument is dismissed because none of taxpayer's assignments of error address this issue.

Appeal by taxpayer from decision entered 30 April 2001 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 14 May 2002.

*Morgan, Herring, Morgan, Green, Rosenblutt & Gill, L.L.P., by David K. Rosenblutt, for appellant-taxpayer.*

*Parker, Poe, Adams & Bernstein, L.L.P., by Charles C. Meeker, for appellee Graham County.*

HUDSON, Judge.

The Master's Mission ("TMM") appeals a decision of the Property Tax Commission (the "Commission") affirming the decision of the Graham Board of Equalization and Review (the "Board") which found that 100 acres owned by TMM were exempt from *ad valorem* taxation, but 1,247 acres similarly owned were not exempt. We affirm.

TMM describes itself as a "training base" which "provides a unique setting for thorough and 'hands on' preparations for missions service." In its brochure, TMM describes its operations as:

Our Technical curriculum teaches and develops skills necessary for opening and maintaining missions work in whatever field of service God directs. Courses include building construction on roads and dams, airstrip construction, mechanics, bush living, water systems, community development, health and first aid, food purchasing and storage, gardening, small animal husbandry, and family living skills that are a must for ministers of the gospel.

TMM owns 1,347 acres in Graham County along the Tennessee border, and operates as a non-profit 501(c)(3) corporation with federal tax-exempt status pursuant to the Internal Revenue Service Code. TMM uses the Graham County property to train missionaries and prepare them for mission trips to remote areas of the world. In the center of the property are several residential structures around a lake. These structures house staff members and guests, as well as the main business office for the operation. Cabins for missionary trainees are located away from the lake, separate from the other residential and business structures. School, community, and church groups

use a campsite on the southeast corner of the property for recreational purposes without charge. The remainder of the land is largely undeveloped.

TMM applied to the Graham County Assessor ("Assessor") for tax exempt status for all of its buildings and land for the 1997 tax year. The Assessor granted TMM an exemption for all structures used to house or train missionaries, as well as 100 acres of the 1,347 acre lot. It did not grant tax-exempt status for the remaining buildings and 1,247 acres. TMM appealed to the Board, and the Board declined to change the exemption status designated by the Assessor. TMM appealed, and the Commission conducted a hearing on 15 March 2001. At the conclusion of TMM's evidence, Graham County (the "County") moved to dismiss TMM's appeal on the grounds that TMM "failed to carry its burden of showing its entitlement to any exemption beyond that already granted by Graham County." The Commission voted to grant the County's motion. On 30 April 2001, the Commission entered a Final Decision granting the County's motion to dismiss TMM's appeal, affirming the decision of the Board, and denying tax-exempt status to TMM. TMM appealed to this Court.

On appeal, the standard of review for a decision of the Commission is controlled by N.C. Gen. Stat. § 105-345.2. "Record on appeal; extent of review." (2001). *See also In re Southview Presbyterian Church*, 62 N.C. App. 45, 46-47, 302 S.E.2d 298, 299 (1983) (describing the scope of review as dictated by N.C.G.S. § 105-345.2). Subsection (b) of that statute provides, in part, that the appellate court "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action." N.C.G.S. § 105-345.2(b). Subsection (b) further provides that the appellate court may grant various forms of relief

if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of statutory authority or jurisdiction of the Commission; or

(3) Made upon unlawful proceedings; or

(4) Affected by other errors of law; or

**IN RE APPEAL OF THE MASTER'S MISSION**

[152 N.C. App. 640 (2002)]

    (5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

    (6) Arbitrary or capricious.

N.C.G.S. § 105-345.2(b). Subsection (c) requires that the appellate court "review the whole record or such portions thereof as may be cited by any party and due account shall be taken of the rule of prejudicial error." N.C.G.S. § 105-345.2(c). "While the weighing and evaluation of the evidence is in the exclusive province of the Commission, where the evidence is conflicting, the appellate court must apply the 'whole record' test to determine whether the administrative decision has a rational basis in the evidence." *Southview*, 62 N.C. App. at 47, 302 S.E.2d at 299 (internal citations omitted).

Before addressing TMM's first argument, we note that in matters before the Commission, the taxpayer bears the burden of proving that its property is entitled to an exemption under the law. *See In re Appeal of Southeastern Bapt. Theol. Seminary, Inc.*, 135 N.C. App. 247, 249, 520 S.E.2d 302, 304 (1999). "This burden is substantial and often difficult to meet because all property is subject to taxation unless exempted by a statute of statewide origin." *In re Appeal of Atlantic Coast Conference*, 112 N.C. App. 1, 4, 434 S.E.2d 865, 867 (1993), *aff'd*, 336 N.C. 69, 441 S.E.2d 550 (1994). Here, the Commission granted the County's motion to dismiss TMM's appeal, because it found that TMM did not carry its burden. We review the "whole record" to determine whether the evidence supports the Commission's findings of fact, and whether those findings of fact support the Commission's conclusion that TMM did not carry its burden of proof. *See* N.C.G.S. § 105-345.2.

[1] In its first argument, TMM contends that the Commission erred in affirming the decision of the Board in that (1) the Commission's findings of fact were not supported by the evidence, and (2) the Commission's conclusions of law were unsupported by its findings of fact and the evidence presented. TMM bases its argument on the fact that the Commission only heard TMM's portion of the evidence. The Commission did not specifically find that the witnesses lacked credibility and TMM argues that "[n]early all of the evidence strongly and directly contradicts the Conclusions of Law."

First, TMM contends that the Commission erred in finding that substantial evidence supported findings of fact numbers 6, 7, and 8. They are as follows:

6. The Master's Mission site is one of the largest privately owned tracts in Graham County. It is widely known that a substantial majority of Graham County is owned by the United States Forest Service, the Tennessee Valley Authority and an Indian tribe. At 640 acres per square mile, the 1,347 acres owned by [TMM] encompass more than two square miles.

7. [TMM] has tax exempt status under the Internal Revenue Service Code as a 501(c)(3) corporation. [TMM] does not pay State or Federal income taxes. [TMM] does receive local and State services, including health care, inspections and public school education. An unpaved State road is adjacent to [TMM] property.

8. The Master's Mission site is steep and much of the relatively flat area has been developed. As of January 1, 1997, there was a campsite located on the southeast corner of [TMM's] property. This campsite was used by school, community and church groups for recreational purposes. There was no showing that regular instruction or courses of study occurred at the campsite.

The first two sentences of number 6 are characterizations of the tract taken directly from the arguments of counsel, rather than from testimony. The last sentence addresses the size of the tract and is supported by testimony from Paul Teasdale, the founder and director of TMM. The unsupported portion of this finding of fact has no bearing on the Conclusions of Law contested by TMM; any error is thus harmless. The only relevant portion of finding of fact number 7, describing the federal tax-exempt status of TMM, is supported by the testimony of Jeffrey Cole, the business manager for TMM. Finding of fact number 8 is supported by the testimony of Mr. Teasdale. The last sentence correctly reflects the whole record, when it states that "[t]here was no showing that regular instruction or courses of study occurred at the campsite."

Having determined that the relevant findings are supported by the record, we turn to the one remaining question of law: whether the Commission's findings support its conclusions and decision that TMM did not meet its burden of proving that it is entitled to a tax exemption pursuant to N.C. Gen. Stat. § 105-278.4. "Real and personal property used for educational purposes." (2001). For the reasons discussed below, we affirm the Commission's decision.

TMM contends that the Commission incorrectly denied tax-exempt status to the remaining 1,247 acres and buildings on its site pursuant to N.C.G.S. § 105-278.4. TMM assigns error only to those conclusions of law concerning the educational exemption, not the charitable or religious exemptions found in N.C. Gen. Stat. §§ 105-278.3 & 278.6 (2001), and thus, we review only whether the educational exemption applies here. *See* N.C. R. App. Proc. 10 (2001) (limiting the appellate court's review to "consideration of those assignments of error set out in the record on appeal"). TMM contests the following conclusions of law:

> 6. [TMM] can be viewed as an entity, which is an educational institution in that it provides an eleven-month course of study for missionary trainees. [TMM], however, failed to show that all of its buildings and land are wholly and exclusively used for educational purposes. Rather, approximately half of the buildings are used for staff and guest housing and for an office for the general business of [TMM]. Graham County thus properly exempted the buildings, which are used by the missionary trainees for studying or living and did not exempt the remaining structures.
>
> 7. [TMM] contends that all of its land should be exempt because missionary training must take place in a remote setting and extended buffers are needed to create such an environment. G.S. § 105-278.4, however, authorizes exemption of "[b]uildings, the land they occupy, and additional land reasonably necessary for the convenient use of any such building." [TMM] failed to show that more than 100 acres, which was exempted by Graham County, is needed for the use of the cabins or classrooms. Indeed, [TMM's] site is over two square miles in size, and only three or four missionary families were training at the site during tax year 1997.

TMM contends that pursuant to N.C.G.S. § 105-278.4(a) and this Court's decision in *Southeastern*, 135 N.C. App. 247, 520 S.E.2d 302, all of its buildings should be exempted from taxation, because they are necessary for the educational function of the institution. N.C.G.S. § 105-278.4(a) provides:

> (a) Buildings, the land they actually occupy, and additional land reasonably necessary for the convenient use of any such building shall be exempted from taxation if:
>
> > (1) Owned by an educational institution (including a university, college, school, seminary, academy,

industrial school, public library, museum, and sim-
ilar institution);

(2)  The owner is not organized or operated for profit and
no officer, shareholder, member, or employee of the
owner or any other person is entitled to receive pecu-
niary profit from the owner's operations except rea-
sonable compensation for services;

(3)  Of a kind commonly employed in the performance of
those activities naturally and properly incident to the
operation of an educational institution such as the
owner; and

(4)  Wholly and exclusively used for educational pur-
poses by the owner or occupied gratuitously by
another nonprofit educational institution (as defined
herein) and wholly and exclusively used by the occu-
pant for nonprofit educational purposes.

"Application of the statutory tax exemption turns on whether [an
institution] is '[w]holly and exclusively' educational in nature." *In re
Appeal of Chapel Hill Day Care Ctr., Inc.*, 144 N.C. App. 649, 653, 551
S.E.2d 172, 175 (2001) (holding that the day care center at issue had a
custodial purpose and was not "wholly and exclusively" educational
in nature), *disc. rev. denied*, 355 N.C. 492, 563 S.E.2d 564 (2002).
Graham County did exempt the training center, thirteen trainees' cab-
ins, women's classrooms, and the bunkhouse from taxation, because
these buildings are used for educational purposes. TMM argues that
the owner's home, the guest house, office building, duplex, and stor-
age building should also be exempt because these buildings are simi-
larly necessary to the educational purposes of the institution.
However, the Commission found as fact the following, which TMM
does not contest on appeal:

3. During 1997, [TMM] had three or four missionary families
in training. These families included a husband and wife. The mis-
sionary trainees lived in the cabins on the site and received
instruction at the classrooms. The remaining cabins were used
for visitors.

4. The other structures at the site are used for staff hous-
ing, guest housing and an office at which the general busi-
ness of [TMM] is conducted. On a typical day, as many as 50
people are present on the grounds of [TMM]. The missionary

trainees and their instructors make up a small minority of these individuals.

These findings of fact support the Commission's conclusions that the Board properly denied tax exempt status to buildings beyond those already exempted. "In deciding whether or not something qualifies as an educational purpose, our courts have consistently held 'that it is not the nature or the character of the owning entity which ultimately determines whether property shall be exempt from taxation, but it is the use to which the property is dedicated which controls.' " *Atlantic*, 112 N.C. App. at 9-10, 434 S.E.2d at 870 (quoting *In re Wake Forest University*, 51 N.C. App. 516, 520, 277 S.E.2d 91, 94, *disc. rev. denied*, 303 N.C. 544, 281 S.E.2d 391 (1981)). Here, the buildings at issue are used for many purposes: as housing for the owner and director of TMM, as lodging for guests who come to the property for any purpose, as a business office for the daily business operation, and as storage for equipment used for many purposes on the property. Mr. Teasdale testified that one of the purposes of his entire organization is "sending" missionaries to different parts of the world. We do not believe that this purpose qualifies as "wholly and exclusively" educational, as required by the statute. We find nothing else in the whole record to indicate that all of the buildings are used "wholly and exclusively" for educational purposes, and we agree with the conclusion that TMM has not met its burden of proving that its buildings are all entitled to an education exemption from *ad valorem* taxation.

TMM also contends that the non-exempted 1,247 acres of its land are entitled to an education exemption. Pursuant to N.C.G.S. § 105-278.4,

(b) Land (exclusive of improvements); and improvements other than buildings, the land actually occupied by such improvements, and additional land reasonably necessary for the convenient use of any such improvement shall be exempted from taxation if:

(1) Owned by an educational institution that owns real property entitled to exemption under the provisions of subsection (a), above;

(2) Of a kind commonly employed in the performance of those activities naturally and properly incident to the operation of an educational institution such as the owner; and

(3) Wholly and exclusively used for educational purposes by the owner or occupied gratuitously by another nonprofit educational institution (as defined herein) and wholly and exclusively used by the occupant for nonprofit educational purposes.

The Board granted tax-exempt status to one hundred acres in order to provide a "buffer zone" around the buildings and areas used "wholly and exclusively" for educational purposes. The Commission declined to extend the exemption, concluding the following:

9. The use of the campground by outside groups, although a commendable community service, cannot be considered wholly and exclusive educational in nature since there was no showing of a course of study or other education during the camp-outs. Also, the use of one or more rough roads for practice driving during one or more weeks of the year by missionary trainees also does not show whole and exclusive educational use of those roads and the adjoining hundreds of acres during the tax year in question. Finally, the 100 acres, which were exempted, provide a sufficient buffer for the three or four missionary families who were on site in tax year 1997.

As indicated earlier in this opinion, TMM presented no evidence, and the Commission did not find as fact, that the camping area is used "wholly and exclusively" for educational purposes. Both the director and the business manager of TMM testified that different church and school groups used the campsite. Mr. Teasdale stated that "they start learning about missions from that," and Mr. Cole said that young people and their families use it "so that they understand more about missions." The grounds are also open to community and public groups for camping. While this purpose is arguably educational, it is not "wholly and exclusively" so. Therefore, the campsite does not satisfy the requirements of N.C.G.S. § 105-278.4(b).

As to the remaining acres, the Commission concluded that "[t]he Master's Mission failed to show that more than 100 acres, which was exempted by Graham County, is needed for the use of the cabins or classrooms" and "the 100 acres, which were exempted, provide a sufficient buffer for the three or four missionary families who were on site in tax year 1997." A "buffer zone" is additional land around an exempt building or portion of land that is "reasonably necessary for the convenient use of any such" land or building. N.C.G.S. § 105-278.4(a) & (b). "We have held that buffering is an appropriate

consideration in determining whether an educational exemption applies to a particular parcel." *Southeastern*, 135 N.C. App. at 257, 520 S.E.2d at 308. Our Courts have refused to "draw bright lines or to quantify the amount of acreage a church reasonably may purchase for the purpose of establishing a buffer zone. Each case turns upon its unique facts, and appellate courts will view with a careful eye any acquisition of extensive acreage under less compelling facts." *In re Appeal of Worley*, 93 N.C. App. 191, 198, 377 S.E.2d 270, 274 (1989). We recognize that some cases we cite involve a religious exemption, not an educational one, but we believe these cases are analogous on this point.

In *Worley*, this Court held that a five acre buffer zone was exempt from taxation because it was necessary "to protect the sanctity and serenity of the church from encroaching industrial development." *Id.* at 197, 377 S.E.2d at 274. There, the five acres were undeveloped and used regularly by church youth groups for recreational church related activities, as well as by church members for hunting deer. *See id.* In *Southeastern*, a case concerning an educational exemption for undeveloped land surrounding a seminary, this Court held that the lots buffered the campus from a major highway and encroaching urbanization. *See Southeastern*, 135 N.C. App. at 257, 520 S.E.2d at 308. The Court explained that these parcels were part of the original Wake Forest campus purchased by the seminary, that the seminary intended to maintain a rural campus, and "that students use all the disputed parcels for various activities consistent with the educational philosophy of the Seminary." *Id.*

Here, TMM failed to show that it requires more than 100 acres to buffer it from encroaching urbanization, development, or other forces that might compromise its educational purpose. TMM contends that the entire property is used for educational purposes, that is, to teach missionary trainees the skills needed to live in remote parts of the world, and moreover, that this land is also required as a buffer. Mr. Cole testified that he was concerned about a water bottling company that borders the property, and that some neighboring private individuals might allow their property to be logged. Neither of these concerns constitute a threat to the exempt area of this property, nor are they comparable to the encroachments in *Southeastern* or *Worley*, where major highways and urban development came within a distance of only a few acres of the property used for educational or religious purposes. TMM was granted an exemption for 100 acres, an acreage the Commission concluded was adequate to protect the cab-

ins and schools of the three or four families on the site in 1997. After reviewing the whole record, we find nothing to indicate that the Commission's conclusion was incorrect.

[2] In its second argument, TMM contends that the Commission "erred when it displayed unfairness and prejudice to the taxpayer." TMM points to several statements and questions posed during the hearing. However, since none of TMM's assignments of error address this issue, this argument is not properly before this Court. Pursuant to Rule 10 of the North Carolina Rules of Appellate Procedure ("the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal"), we decline to address this argument.

We affirm the Commission's decision that TMM failed to carry its burden of proving that it is entitled to any education tax exemption pursuant to N.C.G.S. § 105-278.4 beyond that granted by Graham County.

Affirmed.

Judges GREENE and BIGGS concur.