NO. COA13-1447

NORTH CAROLINA COURT OF APPEALS

Filed: 19 August 2014

IN THE MATTER OF THE APPEAL OF:      Property Tax Commission sitting
                                     as the State Board of
GRANDFATHER MOUNTAIN STEWARDSHIP     Equalization and Review
FOUNDATION, INC., from the           11 PTC 068
Decision of the Avery County Board
of Equalization and Review
Concerning the Valuation of Real
Property for Tax Year 2011.


        Appeal by Avery County from orders entered 21 February and

24 June 2013 by the North Carolina Property Tax Commission.

Heard in the Court of Appeals 22 April 2014.


        *Poyner Spruill LLP, by Chad W. Essick and Andrew H.
        Erteschik, and Harrison & Poore, PA, by Michaelle Poore,
        for appellant Avery County.*

        *Tuggle Duggins, P.A., by Martha R. Sacrinty and Michael S.
        Fox, for appellee Grandfather Mountain Stewardship
        Foundation.*


        BRYANT, Judge.


        Where the property was not wholly and exclusively used for

educational or scientific purposes pursuant to North Carolina

General Statutes, sections 105-275(12) and 105-278.7(a), we

reverse the order of the North Carolina Property Tax Commission

granting Grandfather Mountain Stewardship Foundation exemption from property taxes.

Grandfather Mountain Stewardship Foundation, Inc. (GMSF), filed an application for exemption from property taxes in Avery County listing three parcels of real property (the subject property).  In its 24 December 2010 application, GMSF indicated that the tax exemption was sought due to GMSF's status as a charitable or educational foundation pursuant to N.C. Gen. Stat. ' 105-278.7.  The Avery County Tax Assessor's Office denied GMSF's application due to the belief "that Grandfather Mountain is not 'Wholly and exclusively used by its owner for nonprofit educational, scientific, literary purposes' as defined by NCGS ' 105-278.7(a)(1)."  GMSF appealed to the Avery County 2011 Board of Equalization and Review, stating "[t]he property qualifies as tax exempt under N.C. Gen. Stat. ' 105-278.7 and N.C. Gen. Stat. ' 105-275(12) . . . ."  The Equalization and Review Board also denied the request for tax exempt status.  GMSF filed a notice of appeal and application for hearing with the North Carolina Property Tax Commission (the Commission).

On 24 June 2013, following a 10 April 2013 hearing, the Commission entered an order in which it concluded that GMSF was a charitable association; that the revenue GMSF collected from

the operation of the real property funded the educational and scientific uses of the property; any structures on the real property that were not used directly for scientific or educational purposes were incidental to the scientific and educational uses of the property; and the subject property[1] was "wholly and exclusively used for scientific and educational purposes." The Commission concluded that "[e]ach of the tracts [was] eligible as exempt under both [General Statutes, sections 105-275(12) and 105-278.7] . . . ." Avery County appeals to this Court.

_____

On appeal, Avery County raises the following issues: the Commission erred by (I) exempting the property from taxation; (II) holding that the property satisfied the ownership requirements for an exemption; and (III) holding that the vacant lot is exempt from taxation.

*I*

_____

[1] GMSF notified the Commission that it abandoned its appeal from the denial of tax exempt status with regard to one of the three parcels of real property listed on its original application for tax exemption. Therefore, only the remaining two land parcels comprised the subject property on review before the Commission. On Parcel Two, GMSF operated the Grandfather Mountain tourist attraction and Parcel Three served "as a buffer tract to preserve the natural area and prevent encroaching development."

Avery County argues that the Commission erred by exempting the property from taxation because the property is a self-described tourist attraction that is not "wholly and exclusively used for educational or scientific purposes." Specifically, Avery County contends the Commission erred in concluding GMSF was eligible for a tax exemption under both N.C. Gen. Stat. '' 105-275(12) and 105-278.7 because (A) the property was not "wholly and exclusively" used for educational and scientific purposes; (B) the conclusion should have been predicated on how the property was used rather than how the income generated from the property was spent; and (C) the income generated from the property is more than incidental income. For the most part, we agree.

"Statutes exempting property from taxation due to the purposes for which such property is held and used must, of course, be strictly construed against exemption and in favor of taxation." *In re Forestry Found.*, 35 N.C. App. 414, 428—29, 242 S.E.2d 492, 501 (1978) (citations omitted), *aff'd*, 296 N.C. 330, 250 S.E.2d 236 (1979); *see also In re Appeal of Totsland Preschool, Inc.*, 180 N.C. App. 160, 164, 636 S.E.2d 292, 295 (2006) ("[A]ll ambiguities are to be resolved in favor of taxation." (citations omitted)). "[T]he taxpayer bears the

burden of proving that its property is entitled to an exemption under the law." *In re Appeal of Eagle's Nest Found.*, 194 N.C. App. 770, 773, 671 S.E.2d 366, 368 (2009) (citation omitted).

Appeal from an order or decision of the Property Tax Commission shall lie to the Court of Appeals. *See* N.C. Gen. Stat. § 105-345(d) (2013). "Questions of law receive *de novo* review, while issues such as sufficiency of the evidence to support the Commission's decision are reviewed under the whole-record test." *In re Appeal of Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) (citing N.C.G.S. § 105-345.2(b)). This Court "may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings[.]" N.C.G.S. § 105-345.2(b) (2013).

*A.*

Avery County contends the Commission erred by concluding GMSF's use of the property was "wholly and exclusively . . . educational and scientific." We agree.

GMSF acknowledges that it seeks tax exemption on the grounds that it is a charitable association or institution and the subject property is "exclusively held and used by its owners for educational and scientific purposes as a protected natural

area . . . ." GMSF submitted its application for property tax exemption in December 2010. In its application, GMSF stated that it sought tax exempt status pursuant to General Statutes, section 105-278.7. Following the Avery County Tax Assessor's denial of GMSF's application due to the tax assessor's belief "that Grandfather Mountain is not 'Wholly and exclusively used by its owner for nonprofit educational, scientific, literary purposes' as defined by NCGS ' 105-278.7(a)(1)," GMSF filed an application for hearing before the Board of Equalization and Review. In its application for hearing, GMSF maintained that the tax assessor's appraisal should be adjusted because "[t]he property qualifies as tax exempt under N.C. Gen. Stat. ' 105-278.7 and N.C. Gen. Stat. ' 105-275(12) . . . ." However, as noted herein, Avery County appeals the decision of the Property Tax Commission which concluded, *inter alia*, that the subject property was wholly and exclusively used for scientific and educational purposes.

We review this dispositive issue on appeal de novo as there does not appear to be a conflict in the evidence as to the *use* of the property; rather, Avery County challenges whether the legal conclusion is correct as a matter of law. *See In re Appeal of Totsland Preschool, Inc.*, 180 N.C. App. at 162—63, 636

S.E.2d at 295 (This Court reviews questions of law de novo, and "considers the matter anew and freely substitutes its own judgment for that of the Commission.").

Pursuant to General Statutes, section 105-275, as effective at the time GMSF filed its initial application for exemption in 2011, property meeting the following description may be excluded from taxation:

> Real property owned by a nonprofit corporation or association exclusively held and used by its owner for educational and scientific purposes as a protected natural area. (For purposes of this subdivision, the term "protected natural area" means a nature reserve or park in which all types of wild nature, flora and fauna, and biotic communities are preserved for observation and study.)

N.C. Gen. Stat. ' 105-275(12) (2011)[2].

---

[2] N.C.G.S. ' 105-275(12) was amended by 2011 N.C. Sess. Laws 274 (effective for taxes imposed for taxable years beginning after 1 July 2011). In pertinent part, the amended subdivision reads as follows:

> Real property that (i) is owned by a nonprofit corporation or association organized to receive and administer lands for conservation purposes, (ii) is exclusively held and used for one or more of the purposes listed in this subdivision, and (iii) produces no income or produces income that is incidental to and not inconsistent with the purpose or purposes for which the land is held and used. . . . A disqualifying event occurs when the property

Pursuant to North Carolina General Statutes, section 105-278.7,

> [b]uildings, the land they actually occupy, and additional adjacent land necessary for the convenient use of any such building shall be exempted from taxation if wholly owned by [a charitable association or institution], and if:
>
> (1) Wholly and exclusively used by its owner for nonprofit educational [or] scientific, . . . . purposes as defined in subsection (f) . . . .

*Id.* § 105-278.7(a) (2013).

In *In re Forestry Found.*, 296 N.C. 330, 250 S.E.2d 236, the petitioner sought a tax exemption for 49,455 acres of forest in Onslow County. The petitioner was a nonprofit organization

---

> (i) is no longer exclusively held and used for one or more of the purposes listed in this subdivision, [or] (ii) produces income that is not incidental to and consistent with the purpose or purposes for which the land is held and used . . . . The purposes allowed under this subdivision are any of the following:
>
> a. Used for an educational or scientific purpose as a nature reserve or park in which wild nature, flora and fauna, and biotic communities are preserved for observation and study. For purposes of this sub-subdivision, the terms "educational purpose" and "scientific purpose" are defined in G.S. 105-278.7(f).

N.C.G.S. § 105-275(12)(a) (2011) (Effective for taxes imposed for taxable years beginning on or after July 1, 2011).

whose objective was "to promote the development and practice of improved forestry methods and to promote the production and preservation of growing timber for experimental, demonstration, educational, park and protection purposes." *Id.* at 331, 250 S.E.2d at 237—38. In 1934, the Attorney General of North Carolina expressed his opinion that the forest property was exempt from ad valorem taxes "because of the public nature of the ([petitioner]) and the purpose for which these lands [were] held." *Id.* at 331—32, 250 S.E.2d at 238. In 1945, the petitioner signed a ninety-nine year lease with the Halifax Paper Company, Inc. *Id.* at 332, 250 S.E.2d at 238. Halifax Paper Company's successor in interest was Hoerner-Waldorf Corporation, which held the lease at the time of the tax exemption hearing. The lease, as amended in 1951, afforded the Hoerner-Waldorf Corporation the right to construct roads, maintain drainage ditches and fire lanes, and cut timber and pulpwood. *Id.* "Students and study groups interested in the operation of the Forest [were] allowed to tour or conduct research in the Forest . . . subject to the contract provision that 'such study groups or students will do nothing whatsoever to interfere with any program undertaken or in progress by Paper Company in or on [the] Forest.'" *Id.* at 333, 250 S.E.2d at 238—

39. In 1975, the petitioner filed an application for tax exemption with the Onslow County Tax Supervisors. The application was denied. Arguing before our Supreme Court, the petitioner contended that the forest property was exempt from ad valorem taxes pursuant to four statutes, including N.C.G.S. ' 105-275(12), exempting "[r]eal property owned by a nonprofit corporation or association exclusively held and used by its owner for educational and scientific purposes as a protected natural area." *Id.* at 335, 250 S.E.2d at 240 (emphasis omitted). The Court noted that according to Webster's Third New International Dictionary, the word "exclusive" was synonymous with the words "sole" and "single" and the Century Dictionary defined the word as "appertaining to the subject alone; not including, admitting, or pertaining to any other or others; undivided; sole; as, an exclusive right or privilege; exclusive jurisdiction." *Id.* at 337, 250 S.E.2d at 241. The Court held that because the petitioner's lease agreement, as amended in 1951, gave Hoerner-Waldorf Corporation virtually complete operational control of the forest property and Hoerner-Waldorf Corporation's *use* of the forest property was primarily commercial, the property was not exclusively used for scientific

and educational purposes. *Id.* at 338—39, 250 S.E.2d 241—42.[3]

In the instant case, in concluding that the subject property was wholly and exclusively used for scientific and educational purposes, the Commission made several findings of fact detailing the purposes for which the property was used. GMSF engages in a number of educational activities such as teaching visitors about the animals housed on the property, the native flora and fauna, and leading guided hikes, hosting a nature museum, and educating visitors about stewardship. The Commission also found that GMSF provided both formal and informal programs to educate visitors from a range of age groups about the property. It found that GMSF engages in scientific research on the property, such as taking weather measurements and researching air quality, birds, rare plants, well cores, bats, and salamanders. The Commission also found that the property has been designated a United Nations Biosphere Reserve.

Avery County does not dispute that there are educational

---

[3] Prior to petitioner's appeal to our Supreme Court, this Court reasoned that the actual use of property, rather than a goal or objective for its use, determines whether it is to be excluded from the tax base. "Use, rather than ownership or objective, is the primary exempting characteristic of the Machinery Act, G.S. 105-271 through G.S. 105-395, which includes the statute[] under consideration. H. Lewis, *Annotated Machinery Act of 1971*, (Supp.1973, Comment, p. 55)." *In re Forestry Found.*, 35 N.C. App. at 426, 242 S.E.2d at 499-500.

and scientific activities that occur on the property but contends there are substantial retail, commercial, recreational, lodging, and office uses that also occur on the property. Several of the Commission's findings support Avery County's contention of substantial retail and commercial activity on the property, including profit from retail sales in excess of one million dollars. Avery County also contends that the vast majority of retail sales on the property are classified by GMSF as "non-mission." We note with interest the Commission's finding that GMSF collects revenue from admission tickets, food sales, souvenir sales, and special programs. The deposition testimony of Emerson Penn Dameron, Jr., President of GMSF, is illuminating as to the activities and uses on the subject property.

President Dameron testified that prior to 1950, Grandfather Mountain was not a travel attraction; individuals visited Grandfather Mountain to hike and explore. Subsequently, the owner of Grandfather Mountain "set about converting it into a more formalized, accessible attraction . . . and began the process of expanding access to the general public rather than just to explorers and naturalists and scientists." "[E]ssentially all of the improvements that are on the property

subject to this appeal are located on one parcel." Of the improvements constructed, President Dameron noted a swinging bridge, a small woodcarving shop, two guest cottages, a visitor's center, an animal habitats center, a museum, a fudge shop, and an administrative offices building. In 2010, 244,215 guests visited Grandfather Mountain. Gift shops located in the museum and the visitor's center sold retail items, such as hiking equipment, souvenirs, and snacks. Honey, jelly, fruit, woodcarvings, and books on woodcarving were also sold on the property. Within the nature museum, visitors could purchase food and beverages from an on-site restaurant; nearby, treats could be purchased from a free-standing fudge shop. President Dameron also noted that in 2010, GMSF recognized $1,108,971.00 in profit from retail sales.

Though not always a source of revenue, the property is also used for annual events such as the Grandfather Mountain Highland Games (which celebrates Scottish heritage as its relates to Western North Carolina), Singing on the Mountain, a Klondike Derby for the boy scouts, a Girl Scout Roundup, a family camping weekend, and corporate picnics. The facility is also made available to local groups such as the Audubon Society, the animal shelter, and Habitat for Humanity.

The land parcels comprising Grandfather Mountain are also subject to a conservation easement with the Nature Conservatory, and have been honored with conservation awards and designated a United Nations Biosphere Reserve. The record supports that the attraction of Grandfather Mountain offers educational and scientific presentations about birds, reptiles, animals, and native flora and fauna; and that revenue from the operations on the property is used to further educational and scientific uses on the property.

However, notwithstanding that such educational and scientific endeavors might be the primary uses of GMSF's subject property, we cannot hold that the property is *wholly* and *exclusively* used for educational and scientific endeavors as defined by our Supreme Court in *In re Forestry Found.*, 296 N.C. 330, 250 S.E.2d 236. The observations of the president of the GMSF confirm this.

> Q.   . . . [O]n June 4, 2009, Grandfather Mountain, Inc., conveyed a conservation easement to the State of North Carolina limiting property owner to using the property for conservation and education activities.
>
> It is true that there are commercial and retail activities that take place on the site. Is that correct?
>
> A.   That's correct.

> Q.   So it not entirely accurate to say that it's limited for conservation and education activities. Is that correct?
>
> A.   . . . It does – as we've already noted, it would permit us to continue activities that were already taking place on the mountain above and beyond conservation and education.

There is support in the record that GMSF charges market-rate admission fees and operates to some extent as a for-profit tourist attraction. Located on the property are administrative offices from which GMSF manages Grandfather Mountain's retail and commercial services. Based on the President's comments and the events described in the record, it is clear GMSF operated under the proposition that a change to its Internal Revenue Service 501(c)(3) nonprofit status along with the conveyance of a conservation easement would also exempt the subject property from Avery County property taxes. The record owner of the property commonly known as Grandfather Mountain is Grandfather Mountain, Inc. (GMI), a for-profit corporation. GMSF is a 501(c)(3) nonprofit corporation which is the sole shareholder of GMI and holds the property subject to a triple net lease. The Commission found that this lease places the burdens and obligations of ownership of the subject property on GMSF, including responsibility for paying all real property taxes.

Prior to leasing the property to GMSF in 2009, GMI engaged in transactions and granted conservation easements to the Nature Conservatory and the State of North Carolina for the purpose of preserving the property for educational and scientific purposes. It appears, based on the observation of GMSF's President, that GMSF was under the impression the conservation easement, by limiting the use of the property for conservation and educational activities, would also allow for the continuance of commercial activities. While that assumption may be valid for purposes of the easement and maintaining the 501(c)(3) status, it is not sufficient to withstand the requirements of N.C.G.S. '' 105-275(12) and 105-278.7(a). Despite GMSF's status as a 501(c)(3) nonprofit corporation and the conveyance of a conservation easement, the *use* of the property must still come within the scope and meaning of "wholly and exclusively used for educational and scientific purposes." *See In re Forestry Found.*, 296 N.C. at 337—38, 250 S.E.2d at 241 (where the Court considered and rejected petitioner's argument that "the term 'exclusively' is not to be construed literally and that . . . the word refers to the primary and inherent activity and does not preclude incidental activities . . . ."). Here, the subject property does not meet the statutory requirements necessary to

receive tax exempt status.

Accordingly, we must reverse the Commission's conclusion that the real property subject to GMSF's stewardship is "used wholly and exclusively for scientific and educational purposes."

*B* and *C*

Avery County further contends the Commission erred in basing its decision to grant GMSF's request for tax exemption on how the income from the property was spent, instead of how the property was used.

GMSF applied for an exemption from property taxes pursuant to General Statutes, sections 105-275(12) and 105-278.7(a). As discussed in subpart A, both statutes require that the property be used wholly and exclusively for educational and scientific purposes. *See* N.C.G.S. '' 105-275(12), 105-278.7(a). As we have determined that the subject property is not wholly and exclusively used for educational and scientific purposes, we need not further address this issue.

For the aforementioned reasons, we reverse the Commission's order granting GMSF an exemption from property taxes pursuant to General Statutes, sections 105-275(12) and 105-278.7(a).

*II*

Next, Avery County argues that the Commission erred by

holding GMSF satisfied the ownership requirements imposed by General Statutes, sections 105-275(12) and 105-287.7, to be eligible for property tax exemption. We note that because the relevant statutes require ownership to rest in a charitable association or institution *and* be wholly and exclusively used for scientific or educational purposes, and because of our holding in Issue I, we need not reach this argument. However, were we to address it, it is not clear that GMSF would satisfy the statutory ownership requirements. *See In re Appeal of Eagle's Nest Found.*, 194 N.C. App. at 778, 671 S.E.2d at 371 (considering the daily $150.00 "market rate" charged summer campers and the $15,000.00 rate charged each student participating in a semester-long high school course load in comparison to the two percent of revenue used for financial aid in concluding the nonprofit 501(c)(3) corporation running the camp did not satisfy the meaning of "charitable association or institution" as considered in N.C. Gen. Stat. ' 105-278.7); *see also Rockingham Cnty. v. Elon Coll.*, 219 N.C. 342, 346—47, 13 S.E.2d 618, 621 (1941) (Holding the buildings owned by Elon college and rented for business purposes were taxable despite the college's use of all the profits for educational purposes. "The fact that a commercial enterprise devotes its entire

profits to a charitable or other laudable purpose does not change the character of its business nor the purpose for which it is held. It is still a commercial enterprise, and is held as such.").

*III*

Lastly, Avery County argues that the Commission erred by holding that the vacant lot (Parcel Three) is exempt from taxation. Specifically, Avery County contends the Commission failed to find the lot was "necessary for the convenient use of any buildings" as required for exemption pursuant to General Statutes, section 105-278.7. We briefly address the Commission's ruling as to this separate parcel.

General Statutes, section 105-278.7, allows property tax exemption for "[b]uildings, the land they actually occupy, and *additional adjacent land necessary for the convenient use of any such building* . . . if: (1) Wholly and exclusively used by its owner for nonprofit educational, scientific, literary, or charitable purposes . . . ." N.C.G.S. § 105-278.7(a).

In an unchallenged finding of fact, the Commission stated "[t]he Foundation operates the Grandfather Mountain tourist attraction on Parcel Two and uses Parcel Three as a buffer track

to preserve the natural area and prevent encroaching development."

In *In re Appeal of the Master's Mission*, this Court reviewed the Graham County Board of Equalization's denial of an application to extend the tax exemption granted to 100 acres by more than 1,200 acres as property used for educational purposes. 152 N.C. App. 640, 647, 568 S.E.2d 208, 213 (2002). The original 100 acres had been granted tax-exempt status "in order to provide a 'buffer zone' around the buildings and areas used 'wholly and exclusively' for educational purposes." *Id.* at 648, 568 S.E.2d at 213. Though it affirmed the Board's denial of an application to extend the buffer, the *Master's Mission* Court noted "[a] 'buffer zone' is additional land around an exempt building or portion of land that is reasonably necessary for the convenient use of any such land or building. We have held that buffering is an appropriate consideration in determining whether an [] exemption applies to a particular parcel." *Id.* at 648—49, 568 S.E.2d at 213 (citations and quotations omitted).

Here, Parcel Three was found to be "a buffer track to preserve the natural area and prevent encroaching development" upon Parcel Two which accommodates Grandfather Mountain tourist park, and as such, Parcel Three's status as a tax-exempt

property is dependent upon the status of the main tract, Parcel Two. *See generally id.* As we have determined that the real property encompassing Grandfather Mountain tourist park is not eligible for exemption pursuant to N.C.G.S. ' 105-278.7, due to its dependent status, Parcel Three must also be ineligible for such exemption. For these reasons, we hold the Commission erred in concluding that the property was eligible for tax exemption pursuant to N.C.G.S. ' 105-278.7, as it applies to Parcel Three, the buffer tract.

For the foregoing reasons, we reverse the order of the Commission.

Reversed.

Judges HUNTER, Robert C., and STEELMAN concur.